The first case 20-9573, Mendez-Benhumea v. Garland. I know I've messed up that name. I apologize for that. Counsel Propellant, if you would make your appearance and proceed. Good morning judges. My name is Catherine Davies appearing for the petitioner Mendez-Benhumea. I'd like to reserve three minutes for rebuttal if I could. May it please the court. Only point to point three percent of all American citizens identify as transgender. This case is about a minor child who came out as transgender in the fifth grade after his father's removal hearing had already been completed. This is exactly the case that is contemplated under the law for consideration of exceptional extremely unusual hardship standards when related to applications for cancellation of removal in the removal context. However, the applicant was unable to file these applications while the case was pending before the immigration court. Case law Mendoza-Hernandez and Capilla-Cortez prevented him from filing these applications due to the stop time. Later when he was he had when Pereira came out he did file a motion requesting this form of relief and was denied because of the standards of I just stated with Board of Immigration Appeals. He then attempted to reapply when Banuelos versus Barr the 10th Circuit case was announced and this case was also denied by the 10th by the Board of Immigration Appeals. Banuelos versus Barr was later affirmed by Nez Chavez a Supreme Court case and the agency allowed 180 days to file these applications. The deadline was until November 16, 2021. The respondent himself filed his case as early as September 2020. This court has jurisdiction because equitable tolling would allow this court to review this case. The respondent did exercise due diligence and exceptional circumstances did exist to accept the application for cancellation of removal out of time because he was prevented from filing it in the first instance. He also filed an application a motion to reopen his case for asylum which predated the cancellation of removal application on the basis of changed country conditions. The government is arguing that the changed country conditions do not relate to the child's transgender status. I argue that you can't read these laws in a vacuum. When the respondent was originally in removal proceedings in 2018, he believed he'd be returning to Mexico with a U.S. citizen daughter, not a U.S. citizen transgendered son. When the child then came out in the fifth grade and disclosed this not only to their father, their pastor, but the school, the father suddenly was in the position of returning from the United States to Mexico, a place that the child would face daily threats, shunning, and possible physical abuse. Let me stop you there Ms. Davies. Let's take that as for the moment. Let's just take that as a given that the child would face the shunning and the abuse. However, has that changed? I mean, hasn't that been the case prior to when he initially was able to file his application for asylum and those other things? I mean, wasn't that the case in Mexico at that time too as it relates to transgendered individuals? Absolutely. The country conditions itself didn't change. What had changed for the family was the relationship that the respondent had with respect to those country conditions. In 2018, when he was in removal proceedings, the child had not, she was only eight years old at the time and didn't become or announce transgender status until 10 years old, which was sometime after the removal proceedings had already been completed. But that gets to the heart of the question though. I mean, if his position vis-a-vis Mexico has changed because now he has a transgender child and Mexico hasn't changed, it's still as, you know, whatever word you want to use in terms of how it views transgendered individuals, then the law doesn't contemplate this situation vis-a-vis the motion to reopen, right? I mean, it's talking about changed country conditions. The fact that his relationship to the country has changed is not what the law speaks of, does it? Well, the policy behind saying that an individual cannot reopen their case for a changed personal circumstance is related to whether or not the person was married or divorced, and in the Chinese cases, relating to the number of children they had. So a person who had more than one children while they resided in the United States has argued in the past that that's a changed country conditions, but the courts have said that that's a personal consideration that can be manipulated. That's a Wei case, right? Yes, and so yes, that was a changed personal circumstance. In this situation, I take it part of your argument is sort of derivative because you're saying that his circumstances have changed because his child's circumstances have changed, and if that's true, then why is it that different than Wei? I mean, why does Wei even help you? It seems to me it undercuts your position. Well, in this case, I'm arguing that he has no control over the gender identity of his child. It's something that he could not manipulate, and it's not something that he had any ability to say yes or no, and I think that if a father were to say, look at their children and say, this is going to be a much harder road for my family, that they would choose the easier road for their family. In the context of the derivative asylum, it comes up more in the female genital mutilation cases, which the circuits have been split on, the flowing hardship from a child to a father. In this case, we're arguing that yes, he, as the parent protector, the child's only protector in this case, when returning to the himself would be facing harm. In fact, that's a conceded issue with the Board of Immigration Appeals. They say, yes, if this child, if he were in a Mexican national returning to Mexico, he himself would have a claim for asylum, and then therefore, our derivative claim relates to, is more couched in the cases relating to the female genital mutilation, where the parent would the only protector, and in those cases, often against all of society that wants to remove the genitals of their children, and it's very similar in that context. Well, going back to the genital mutilation cases, I mean, one stark distinction that's drawn in some of these circuit cases is when the child is a U.S. citizen, this child doesn't have to go to Mexico. So why would this child necessarily face any persecution at all as a result of being a transgender child? No, the child doesn't have to return to Mexico, but the father themselves, the society would say, if the father is accepting of the transgender child, then that goes against all societal norms in Mexico. With respect to the cancellation of removal claim, the child would be left with a single parent in a stable household, going from a stable household to an unstable household, and the only parent that would be, he would be left with, would be his mother, and that mother has identified multiple times that she is not going to be acceptance of the transgender, not going to be accepted of changing the name, changing clothing, or not accepting the school's position in allowing him to live his life as a male child. Well, that's not optimal, but that doesn't necessarily answer the question of whether the law would grant you a leave. Let me ask you this hypothetical. You reference the notion of something happening beyond your control. Well, what if I, after the time to file an asylum claim, decided I had gone through that proceeding, and then I decided I had an awakening that I was gay, and that I was going to come out. At that juncture, could I then, under your logic, come back and say, I need to have a reopening now because I was going to go to Mexico before, and if I went to Mexico before, I wouldn't have been persecuted, but now I will be persecuted because I'm gay. Would I be able to file a motion to reopen under that situation? Because my, the logic there, I would argue for you, that it's beyond my control. I can't do anything about that. You know, I found out my identity, and I can't do anything. So, would I, that person, be able to file a claim as well? Absolutely. What is our standard of review here? It's a standard discretion, isn't it? It's an abusive discretion standard of review. All right, and do we have any jurisdiction to review when there are no, when there's no legal error? If there's, well, if the Board of Immigration Appeals abuses their discretion by not following, by not exercising discretion, they haven't provided any rational explanation, or they inexplicably depart from policies, such as... They've given a very rational explanation that their decisions have to have a change of country conditions, not personal conditions. That, right, they've, what I'm arguing is that... Do we have any jurisdiction to even review that? You have jurisdiction to review whether or not it's an abusive discretion, Your Honor. Well, counsel... It's not a legal issue, is it? No. Any questions of law and underlying claims can be reviewed before, by this court. And if there's a question of law of whether or not it is or isn't a personal, you know, change personal consideration, then yes. And on the terms of cancellation of removal, because there's two applications here, the Board of Immigration Appeals asserts that Layla is like any other United States citizen child. And I think that really is very short-sighted. Layla doesn't... No other U.S. citizen child has to decide which bathroom they have to go in when they're in the fifth and sixth grade, when they get sex education classes, which sex education... Counsel, could I just jump in? You mentioned the two applications. You're challenging two orders by the Board, correct? Yes, Your Honor. All right. And the one relating to a motion to reopen for cancellation of removal, the board denied that based on lack of hardship. Is that correct? Ultimately, that was their finding, is there was not a prima facie showing, and they said that there was not exceptional, extremely unusual... All right. So, I'm back to Judge Kelly's question. On that particular order, if the board said no lack of hardship, why do we have jurisdiction to review that? That's not a legal determination, is it? The use of discretion... So, discretion... Well, I'm asking, was that a factual determination or a legal determination? Well, they have to determine whether there's a reasonable likelihood of success on the merits, because once a prima facie case is shown, there is no discretion. The board must reopen those cases. And in this instance, it is very fact-centered. And when we're talking about what facts are being taken into consideration, we want to take into consideration of the totality of the facts. And in this case, the totality of the facts were not taken in consideration. The applicant should have been given an opportunity to have the case heard before an immigration court to develop the facts. Well, that seems like more of a procedural argument. At some point, there's some reference to procedural due process in the briefing. Is that now what you're talking about? There is an element of that, yes, Your Honor. Though they don't have a constitutional right to have a relief granted, they do have a constitutional right to a full and fair hearing. And in the cases that have been denied, Al-Zanati, Arambula, Medina, Morales, Ventuna, and Susana Bonilla, all of those individuals ultimately did see an immigration judge and had their claims heard before an immigration judge. Let me just pivot to the order denying the motion to reopen, to apply for asylum, the other order. You discussed this with Judge Holmes earlier about the changed country conditions. Just to be clear, are you arguing at all that the country conditions had changed? I think I heard your answer to be no, but I just want to be clear on that. You're not making that argument, are you? Mexico's country conditions changed. They changed with respect to the position the respondent was in, Your Honor. Well, it sounds like the respondent's situation had changed, but had the situation changed in Mexico? He can't control the situation that changed, so if it was something that he would control, the policy would be in favor of what you're stating. But this is not something that he himself could control. Have you presented any evidence of country conditions? We submitted over a hundred pages of country conditions with that motion to reopen. But does any of it show that conditions had changed? They changed since he began his removal proceedings? No. It's very consistent what's happening to families and children or transgendered individuals in Mexico. Thank you. I'll reserve the rest for rebuttals. Of course. Ms. Pratt, we're ready to hear from you. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, Charisse Pratt for the respondent, Merrick Garlow. Before the Court are two petitions for review challenging two Board decisions. The first decision, dated June 2, 2020, the Board denied the petitioner's motion to reopen as untimely, found there was no exception to excuse the untimeliness because the petitioner asserted change personal circumstances. And then the Board granted the motion to reconsider and decided sui sponte to deny the petition. There was no abuse of discretion. The Board fully outlined its decision. With respect to the second PFR, the Court has no jurisdiction because the petitioner challenges the denial of an application for cancellation or removal and presents no legal question or constitutional claim. And I would also like to point out that with respect to the cancellation application, it is clear on page 34 that the child is not going to go to Mexico. So that is a red herring. And that application is dated August 27, 2020. That postdates the letter in the record from the uncle, which says that he believes that the child would accompany the father to Mexico. The uncle's letter is dated February 11, 2020, and that's on AR 178. But subsequently, when the petitioner submitted his application for cancellation of removal, which was signed by his counsel, and that's on page AR 34, he's indicated that the child is not going to Mexico. So it is a red herring. And so for these reasons, and we would rest on the briefs, the Board did not abuse its discretion in denying the applications. And the Board has no jurisdiction. Can I just stop you for a second? As it relates to the second order, well, as it relates to the order involving cancellation of removal, you alluded to our lack of jurisdiction. The Board at some point made a prioritization determination that petitioner was not eligible for cancellation removal. And in part, that turned on the notion that the child would not be going to Mexico anyway. Am I following that correctly? Yes, that's correct. Okay. All right. Let me walk through, as it relates to the other order, and correct me where I'm wrong. I just want to establish a predicate for a question here. On the other order, there was a question about sui sponte reopening of whether the Board should have sui sponte reopened the application for reopening of removal. And there was a question about this circuit split, this purported circuit split related to derivative asylum. In your view, is there such a circuit split? First question. And if there is such a circuit split and we have not spoken to the issue, is it even possible for the Board to commit an error of law in this situation? So two questions. One, in the context of derivative asylum, do you perceive there to be a absence of us having spoken definitively on the issue for purposes of our matter, the Board have committed an error of law? So we don't believe there is a circuit split because I think this case is distinguishable because I believe in one of the cases where there was a potential for female genital mutilation, the child was not a U.S. citizen. Here, the child is a U.S. citizen. And the child is remaining in the United States according to petitioner's own application for cancellation of removal. And in the brief on page 32, they even speculate should Laila relocate. So it's just simply a red herring in this issue. Okay. Well, work with me on this. Assuming there is a circuit split and we have not spoken on the issue, what is the import of matter of AK relative to whether the legal error in this situation? Well, in matter of AK, the Board found that allowing an applicant to obtain relief based on persecution to a child would contravene Congress. Well, they were outside the statutory scheme. And in that case, so they talked about the question of derivative asylum and they rejected that on the facts of that case, right? Yes. And in that case, if I recall correctly, the child also was a United States citizen. I believe so. And so I guess what I'm trying to get at is this question. Let's assume for the moment that there is a dispute of law here relative to the question of what you do with derivative asylum. If we haven't said anything about it and this is our jurisdiction to review the Board's decision, could the Board have committed an error of law on that issue as long as it adhered to what the BIA had previously said, i.e. in a matter of AK? Because the Board followed the law and the OK, I guess that helps me. But let me try it one more time and then I'll leave it alone. I guess the point I'm trying to get at is a theoretical point, assuming for the moment that we discern some sort of circuit split here. But we have not spoken on the issue. Then as long as the Board follows matter of AK and does what and rules in the way that is consistent with its existing Board precedent, there could not be deemed to be an error of law. Could there or could there? There could not be deemed to be an error of law because the Board followed this precedent. OK. And if there are no further questions, we would rest on the briefs. Thank you. Could I just ask you, Counsel, whether there is a procedural due process issue adequately raised by the petitioner that would call for our review? No, Your Honor. In this case, the petitioner is quarreling with the outcome and the weighing of the evidence. The Board looked at the evidence, assessed the evidence, articulated a rational and reasonable explanation for the decision. And it's based on the full evidence in the record, including petitioner's own application stating that the child is not going to Mexico. That is a red herring. Any other questions? No. Thank you. Thank you, Ms. Pratt. Thank you. Ms. Davies, we'll give you a full minute and you can proceed from there. You're muted. That doesn't count. One of the things I would like to point out is exceptional, extremely unusual hardship doesn't require the child to leave the United States. So when considering cancellation of removal, the consideration is if the child is going to remain here, what position does that child remain in? In this case, it's in a single family household with a mother and a father, a supportive parent, which is the father, who is Mr. Benjumea in this matter. And then the Board of Immigration Appeals equates her as other United States citizen children, but that cannot be the case. They state that in their order. We're talking about a transgender child who's going through gender identity and transition while one of her only supportive parents would be forced to leave the United States. Do we have jurisdiction to review the extreme hardship determination per se? It's my understanding we do not. Well, if they don't, if the Board of Immigration Appeals doesn't state a rational basis or explains or departs from policy, then you would have a they should have been looking at all of the elements of this case or remanding it because it did meet the threshold prima facie standard and allow for these ideas to be developed before an immigration judge. It sounds to me like you've got an inter-familial dispute on whether you take a five-year or a fifth-grade student and say, okay, you're transgender. Mother says, wait a minute, we're not going to do that. Father says, oh, yes, we are. I don't think we can even answer any of those questions. Which is precisely why this should have been remanded to the Immigration Court to have testimony. Because it's a discretionary decision and it's your due process is just a thinly veiled attempt to circumvent our lack of jurisdiction, it seems to me. I would argue that this case should have at least been sent back to the Immigration Court. I didn't state that the discretion, the case does not have to be decided in our favor, but it should have been allowed because it did meet prima facie standard to be remanded for these arguments before the Immigration Court. At a minimum. Thank you, Ms. Davies. We appreciate the arguments of counsel. Case is submitted.